## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXDS, INC. (f/k/a/ EXODUS | ) | Case No. 01-10539 (PJW) |
| COMMUNICATIONS, INC.), et al., | ) | |
| | ) | JOINTLY ADMINISTERED |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EXDS, INC. (f/k/a EXODUS | ) | |
| COMMUNICATIONS, INC.), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 03 – 56185 (PJW) |
| | ) | |
| CB RICHARD ELLIS, INC. (a/k/a CB | ) | JURY TRIAL DEMANDED |
| COMMERCIAL REAL ESTATE GROUP, a/k/a | ) | |
| INSIGNIA/ESG, INC., n/k/a CB RICHARD | ) | |
| ELLIS REAL ESTATE SERVICES, INC.), | ) | |
| HIGHGATE HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### OPENING BRIEF OF DEFENDANT CB RICHARD ELLIS, INC.
### (a/k/a CB COMMERCIAL REAL ESTATE GROUP,
### a/k/a INSIGNIA/ESG, INC., n/k/a CB RICHARD ELLIS REAL ESTATE
### SERVICES, INC.), IN SUPPORT OF ITS MOTION TO WITHDRAW REFERENCE

GREENBERG TRAURIG, LLP            - and-            GREENBERG TRAURIG, LLP
Victoria Watson Counihan (#3488)                    Daniel J. Ansell
Cathy L Reese (#2838)                               Ronald D. Lefton
Dennis A. Meloro (#4435)                            Heath B. Kushnick
The Nemours Building                                The MetLife Building
1007 North Orange Street, Suite 1200                200 Park Avenue
Wilmington, DE  19801                               New York, NY  10166
(302) 661-7000                                      (212) 801-9200

*Attorneys for Defendant CB Richard Ellis Real Estate Services, Inc. f/k/a Insignia/ESG, Inc. sued herein as "CB Richard Ellis, Inc. (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG, Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND AND NATURE AND STAGE OF PROCEEDINGS ..................................... 1

    A.    Exodus Files For Bankruptcy Protection ................................................ 1

    B.    Exodus Commences This Adversary Proceeding ................................... 2

    C.    EXDS Files the First Amended Complaint .......................................... 2

ARGUMENT ................................................................................................................ 4

    A.    The Adversary Proceeding Is Non-Core And Therefore Judicial Efficiency
        And Uniformity Of Bankruptcy Administration Weigh In Favor Of
        Withdrawal Of The Reference ............................................................ 5

    B.    CBRE Has Requested And Has A Constitutional Right To A Jury Trial ............. 7

CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

Page

**Federal Cases**

Beard v. Braunstein, 914 F.2d 434 (3d Cir. 1990)........................................................................ 7

Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154 (3d Cir. 2004) ........... 1

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) ................................................................ 7

Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, 106 B.R 367 (D. Del. 1989) ................. 5

Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, 107 B.R. 34 (D. Del. 1989) ........... 5, 6, 7

In re Big V Holding Corp., 2002 WL 1482392 (D. Del. July 11, 2002) ................................ 4, 7, 8

In re Delaware & Hudson Railway Co., 122 B.R. 887 (D. Del. 1991).......................................... 5

In re FMG, Inc., 1991 WL 230390 (N.D. Ill. Oct. 28, 1991) ...................................................... 5

In re MSCP Holdings, Inc., 316 B.R. 51 (Bankr. D. Del. 2004) ............................................. 5, 6

In re Northwestern Institute of Psychiatry, Inc., 268 B.R. 79 (Bankr. E.D. Pa. 2001)............... 4, 5

In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993)........................................................ 4, 5, 6

Matter of Wood, 825 F.2d 90 (5th Cir. 1987).............................................................................. 6

NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905 (D. Del. 1996) ............. 5, 6, 7, 8

Steege v. Northern Trust Bank/O'Hare, N.A., 1996 WL 332428 (N.D. Ill. June 13, 1996).......... 5

Travellers Int'l AG v. Robinson, 982 F.2d 96 (3d Cir. 1992)....................................................... 7

**Federal Statutes**

28 U.S.C. § 1334(b) ................................................................................................................... 4

28 U.S.C. § 157(a) ..................................................................................................................... 4

28 U.S.C. § 157(b)(1) ................................................................................................................. 4

28 U.S.C. § 157(d) ..................................................................................................................... 4

28 U.S.C. § 157(e) ..................................................................................................................... 8

**Other Authorities**

U.S. Const. amend. VII................................................................................................................ 7

Fed. R. Bankr. P. 5011(a) ........................................................................................................... 1

Del.Bankr.LR 5011-1.................................................................................................................. 1

## PRELIMINARY STATEMENT

Pursuant to this motion, CBRE requests that the District Court withdraw the reference in this action pursuant to 28 U.S.C. §157(d).  Although Del.Bankr.LR 5011-1 provides that this motion is to be filed with the Bankruptcy Court, the motion is to be heard and determined by the District Court.  FED. R. BANKR. P. 5011(a); Del.Bankr.LR 5011-1.

CBRE has also filed with the Bankruptcy Court a Motion to Dismiss, or in the Alternative, to Determine that this Proceeding Is Non-Core (the "Non-Core Motion to Dismiss"). In the Non-Core Motion to Dismiss, CBRE seeks dismissal of this adversary proceeding for lack of subject matter jurisdiction.[1]  In the alternative, CBRE seeks a determination that this action is a non-core proceeding.

## BACKGROUND AND NATURE AND STAGE OF PROCEEDINGS

### A.     Exodus Files For Bankruptcy Protection

EXDS filed a petition for relief under chapter 11 of Title 11 of the United States Code on September 26, 2001.  On or about June 5, 2002, this Court entered its Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming (the "Confirmation Order") Second Amended Joint Plan of Reorganization of EXDS, Inc. and Its Debtor Affiliates (the "Plan").  The effective date of the Plan occurred on June 19, 2002 (the "Effective Date").

---

[1] As set forth in the Non-Core Motion to Dismiss, the Bankruptcy Court lacks subject matter jurisdiction over this adversary proceeding because EXDS is a post-confirmation reorganized debtor, and the claims asserted in the First Amended Complaint are non-core, pre-petition state law claims that do not affect the interpretation, implementation, consummation, execution or administration of the Plan. See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 168 (3d Cir. 2004) (no subject matter jurisdiction over post-confirmation claim that only affected amount of distributions to creditors because claims "had not impact on any integral aspect of the bankruptcy plan or proceeding.").

**B.      Exodus Commences This Adversary Proceeding**

On or about September 25, 2003, over a year after confirmation of the Plan and the Effective Date, EXDS, as a reorganized debtor, filed the complaint commencing this adversary proceeding (the "Complaint") in which it alleges five counts, all based on pre-petition breach of contract and state law causes of action, seeking to recover a portion of the brokerage commission that CBRE earned upon EXDS's leasing certain space in the building known as and located at 636 Eleventh Avenue, New York, New York. The first four counts are against CBRE and allege: first, breach of contract; second, unjust enrichment; third, promissory estoppel; and fourth, illegality. The fifth count alleges breach of contract against co-defendant Highgate Holdings, Inc. ("Highgate").

Highgate answered the Complaint on or about November 12, 2003. CBRE answered the Complaint on or about December 3, 2003. CBRE's answer denied material allegations of the Complaint, asserted affirmative defenses, and interposed three cross-claims against Highgate. Highgate answered CBRE's cross-claims by answer dated December 23, 2003, in which Highgate denied various allegations of the cross-claims and asserted affirmative defenses. EXDS in its Complaint and CBRE and Highgate in their answers each demanded a jury trial.

**C.      EXDS Files the First Amended Complaint**

The parties subsequently engaged in discovery, which is ongoing, and on or about January 20, 2006, EXDS filed the First Amended Complaint against CBRE and Highgate (the "First Amended Complaint"), a true and correct copy of which is attached hereto as Exhibit 1. The first three counts are against CBRE and allege breach of contract. The fifth and seventh counts allege unjust enrichment and promissory estoppel, respectively, against CBRE. The fourth and sixth counts allege breach of contract and unjust enrichment, respectively, against Highgate.

2

Specifically, as against CBRE, the First Amended Complaint alleges: (i) a breach of the Original Commission-Sharing Agreement (as defined in the First Amended Complaint and CBRE's Answer) entered into during the fall of 1999, pursuant to which GlobalCenter retained Insignia to perform real estate brokerage services, including assisting GlobalCenter in locating rental space in New York; (ii) breach of the Preferred Provider Agreement (as defined in the First Amended Complaint and CBRE's Answer) entered into on or about May 1, 2000 between Global Center and Insignia; (iii) breach of the Compromise Agreement (as defined in the First Amended Complaint and CBRE's Answer) entered into on or about May 24, 2000 between GlobalCenter and Insignia; (iv) unjust enrichment resulting from GlobalCenter's retention of Insignia to perform real estate brokerage services; and (v) promissory estoppel resulting from the alleged failure of Insignia to remit certain commissions. See First Amended Complaint.

On or about February 3, 2006, Highgate filed its Answer to First Amended Complaint in which Highgate states that it lacks knowledge or information sufficient to form a belief as to many allegations of the First Amended Complaint, and asserts numerous affirmative defenses. A true and correct copy of Highgate's Answer to First Amended Complaint is attached hereto as Exhibit 2. On or about February 7, 2006, CBRE filed its Answer to Amended Complaint (the "CBRE Answer"), a true and correct copy of which is attached hereto as Exhibit 3, which denied material allegations of the First Amended Complaint, asserted numerous affirmative defenses, including failure of consideration, failure to comply with condition precedent, frustration of purpose, and failure to join an indispensable party, and interposed three cross-claims against Highgate. On or about February 10, 2006, Highgate filed its Answer to First Amended Cross-Claim, a true and correct copy of which is attached hereto as Exhibit 4, in which Highgate denied various allegations of the cross-claims and asserts numerous affirmative defenses. EXDS in the

3

First Amended Complaint, CBRE and Highgate in their answers to the First Amended Complaint have each demanded a jury trial.

## ARGUMENT

Pursuant to 28 U.S.C. § 1334(b), the United States District Courts have original jurisdiction in all civil proceedings arising under, arising in and/or relating to a bankruptcy case. 28 U.S.C. § 1334(b). Each district court may provide that any or all of the foregoing proceedings be referred to a bankruptcy court for that District. 28 U.S.C. § 157(a). In accordance with the foregoing provisions, the District Court for the District of Delaware has provided that all such proceedings shall be automatically referred to the Bankruptcy Court. *See* Order (*In re Referral of Title 11 Proceedings To the United States Bankruptcy Judges For this District*) entered on September 6, 2001.

A district court may withdraw the reference on its own motion or on a timely motion of any party, for cause shown. 28 U.S.C. § 157(d). Section 157(d) does not define "cause shown." In re Big V Holding Corp., 2002 WL 1482392, at *3 (D. Del. July 11, 2002). When evaluating a motion to withdraw the reference, the court should first consider whether the proceeding is core or non-core. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993); see also Big V Holding, 2002 WL 1482392, at * 4 (stating that the determination of core vs. non-core is crucial to the issue of withdrawing the reference). Whether the proceeding is core or non-core is the "first and most important" factor in deciding a motion to withdraw the reference. In re Northwestern Institute of Psychiatry, Inc., 268 B.R. 79, 85 (Bankr. E.D. Pa. 2001). Bankruptcy courts may issue final orders and judgments only with respect to core matters. 28 U.S.C. § 157(b)(1). Because the Bankruptcy Court's findings with respect to non-core matters are subject to *de novo* review by the District Court, as is the case here, efficiency often dictates that a single

4

proceeding before the district court be held instead. NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 907 (D. Del. 1996); Orion, 4 F.3d at 1101.

In addition, whether the parties have requested a jury trial is critical in determining whether the reference should be withdrawn. Where a matter is non-core and a jury trial has been demanded, withdrawal of the reference is appropriate. Northwestern Institute, 268 B.R. at 85; Steege v. Northern Trust Bank/O'Hare, N.A., 1996 WL 332428, at * 1 (N.D. Ill. June 13, 1996) (citations omitted) (holding that cause to withdraw the reference exists where a "party to a non-core proceeding stands on its right to trial by jury, and the parties do not consent to adjudication by the bankruptcy court."). Other factors courts may consider in deciding a motion to withdraw the reference are whether withdrawal would promote uniformity of bankruptcy administration, reduce forum shopping and confusion, conserve debtor and creditor resources, and expedite the bankruptcy process. Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, 106 B.R 367, 371 (D. Del. 1989).

A.    **The Adversary Proceeding Is Non-Core And Therefore Judicial Efficiency And Uniformity Of Bankruptcy Administration Weigh In Favor Of Withdrawal Of The Reference**

Although not defined in the statute, the Third Circuit has defined a core proceeding as one that "invokes a substantive right provided by Title 11, or if it is a proceeding that, by its nature could arise only in the context of a bankruptcy case." In re Delaware & Hudson Railway Co., 122 B.R. 887, 890 (D. Del. 1991) (citing Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir. 1990)); In re MSCP Holdings, Inc., 316 B.R. 51, 54 (Bankr. D. Del. 2004).

State law claims involving alleged pre-petition conduct have traditionally and consistently been held to be non-core. In re FMG, Inc., 1991 WL 230390, at *1 (N.D. Ill. Oct. 28, 1991); see also Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, 107 B.R. 34, 39 (D. Del. 1989) (finding state contract and tort claims that did not involve any interpretation of the

5

Bankruptcy Code and were not otherwise related to the underlying bankruptcy proceeding to be non-core); Orion, 4 F.3d at 1102 (holding that breach of contract action by a debtor against a party to a pre-petition contract who had not filed a proof of claim with the bankruptcy court is non-core). Where the action is simply a state law contract action which, had there been no bankruptcy, could have proceeded in state court, the proceeding is non-core. Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987); see also Hatzel, 107 B.R. at 40 (holding that in order to be a core proceeding, "an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement."); MSCP Holdings, 316 B.R. at 55 (finding complaint non-core where it was based upon contract law, did not invoke a right provided by title 11, and could be asserted outside the bankruptcy context).

Here, the First Amended Complaint alleges counts for breach of various pre-petition contracts by CBRE and Highgate, together with state law claims for unjust enrichment and promissory estoppel against CBRE and Highgate. Each claim stems solely from agreements entered into pre-petition between GlobalCenter, Inc. (the debtor's predecessor and affiliate), Insignia/ESG, Inc. (CBRE's predecessor), and Highgate, and/or dealings between the parties prior to Exodus' bankruptcy filing. None of the counts in the First Amended Complaint against CBRE or Highgate involve a claim that could arise only in a bankruptcy case or require any interpretation of the Bankruptcy Code, and each would exist independent of the bankruptcy environment. Rather, each count in the First Amended Complaint involves a pre-petition state law cause of action. As a result, the claims against CBRE and Highgate clearly are non-core.

Because the Bankruptcy Court's findings with respect to these non-core claims would be subject to de novo review by the district court, judicial efficiency and uniformity of bankruptcy administration will be promoted by withdrawal of the reference. See In re NDEP Corp., 203

6

B.R. at 907.  As was the case in <u>In re NDEP Corp.</u>, here, judicial economy favors withdrawal of the reference because if the reference is not withdrawn, the District Court will still need to review the merits of this dispute when considering the Bankruptcy Court's proposed findings of fact and conclusions of law.  <u>Id.</u>[2]

**B.     CBRE Has Requested And Has A Constitutional Right To A Jury Trial**

Because bankruptcy courts cannot conduct a jury trial in non-core proceedings, the right to a jury trial is a critical factor in determining a motion to withdraw the reference.  <u>Big V Holding</u>, 2002 WL 1482392, at *4; <u>see also</u> <u>Beard v. Braunstein</u>, 914 F.2d 434, 443 (3d Cir. 1990) (holding that "a bankruptcy court cannot conduct a jury trial in a non-core proceeding."). The Seventh Amendment of the U.S. Constitution guarantees litigants a right to a trial by jury "in Suits at common law, where the value in controversy shall exceed twenty dollars, . . ."  U.S. CONST. amend. VII.  As used in the Seventh Amendment, the term "Suits at common law" means "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 41 (1989) (emphasis in original).  The Seventh Amendment requires a jury trial if a cause of action is legal in nature and it involves a matter of private right.  <u>In re NDEP Corp</u>, 203 B.R. at 909 (citing <u>Granfinanciera</u>, 492 U.S. at 42).

As set forth in section A above, this adversary proceeding is non-core, and therefore the Bankruptcy Court cannot conduct a jury trial.  Further, because it has not filed a proof of claim, CBRE has not submitted to the equitable jurisdiction of the Bankruptcy Court and has maintained the right to a jury trial.  <u>Travellers Int'l AG v. Robinson</u>, 982 F.2d 96, 100 (3d Cir.

---

[2] As set forth in the Non-Core Motion to Dismiss, the claims in the First Amended Complaint are non-core.  The claims are pre-petition state law claims that do not involve any interpretation of the Bankruptcy Code and, had there been no bankruptcy, could have proceeded in state court.  <u>See</u> <u>Hatzel & Buehler, Inc. v. Orange & Rockland Utilities</u>, 107 B.R. 34, 39 (D. Del. 1989).  Furthermore, the claims are not even related as they have no impact on any integral aspect of the debtors' confirmed plan.  <u>See</u> <u>Resorts</u>, <u>supra</u> note 1.

1992). It is undisputable that insofar as the First Amended Complaint seeks to adjudicate alleged pre-petition breaches of contract, such actions are legal in nature and involve a matter of private right. See In re NDEP Corp., 203 B.R. at 909; Big V, 2002 WL 1482392, at *5. CBRE properly demanded a jury trial in its Answer to the Complaint and to the First Amended Complaint in accordance with FED. R. CIV. P. 38 (as incorporated in and made applicable to these proceedings pursuant to FED. R. BANKR. P. 9015) and D. Del. L.R. 38.1.  Accordingly, CBRE has the constitutional right to a jury trial.[3]

Pursuant to 28 U.S.C. §157(e), a jury trial in a bankruptcy action must be tried before a district court -- as opposed to the bankruptcy court -- unless: (a) the bankruptcy court has been specifically designated by the district court to conduct jury trials; and (b) all of the parties consent to a jury trial before the bankruptcy court.  28 U.S.C. § 157(e).  Bankruptcy judges in this District have not been specifically designated to conduct jury trials nor does CBRE consent to having this action tried by a jury before the bankruptcy court.

Generally, most courts maintain that there is sufficient cause to withdraw the reference when a bankruptcy litigant duly demands a jury trial and the bankruptcy court lacks authority under 28 U.S.C. §157(e) to conduct a jury trial, either because it has not been specifically designated to do so by the district court and/or because not of all of the parties have consented to having the action tried before the bankruptcy court. See, e.g., In re NDEP Corp., 203 B.R. at 914 ("[b]ecause the parties have not expressly allowed the bankruptcy court to hold a jury trial in this adversary proceeding and because this court has not made a special designation of jurisdiction, the bankruptcy court is not statutorily empowered to hold a jury trial in this matter. For this reason alone withdrawal is compelled."); 1 Collier on Bankruptcy, ¶3.04[1][c] at 3-62, n.3 (15th Rev. Ed. 2005) ("It has been held that the inability of a bankruptcy court to hold a jury trial

---

[3] EXDS and Highgate have also made proper demands for a jury trial.

without the parties' consent is grounds for withdrawing the reference."). CBRE therefore submits there is cause to withdraw the reference in this action pursuant to 28 U.S.C. §157(d).

## CONCLUSION

WHEREFORE, CBRE respectfully requests that the Court: (i) grant its Motion for Withdrawal of the Reference pursuant to 28 U.S.C. §157(d) and FED. R. BANKR. P. 5011; and (ii) grant such other and further relief as is just and proper.

Dated: March 15, 2006

GREENBERG TRAURIG, LLP

By: _____

Victoria Watson Counihan (#3488)
Cathy L. Reese (#2838)
Dennis A. Meloro (#4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
          and
Daniel J. Ansell
Ronald D. Lefton
Heath B. Kushnick
GREENBERG TRAURIG, LLP
The MetLife Building
200 Park Avenue
New York, NY 10166
(212) 801-9200

*Attorneys for Defendant CB Richard Ellis Real Estate Services, Inc. f/k/a Insignia/ESG, Inc. sued herein as CB Richard Ellis, Inc. (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG, Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.)*

# Exhibit

# 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| EXDS, INC. (f/k/a EXODUS | ) | Case NO. 01-10539 |
| COMMUNICATIONS, INC.), et. al., | ) | |
| | ) | Jointly Administered |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| EXDS, INC. (f/k/a EXODUS | ) | |
| COMMUNICATIONS, INC.), | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Adversary No. 03-56185 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CB RICHARD ELLIS, INC. (a/k/a CB | ) | |
| COMMERCIAL REAL ESTATE GROUP, a/k/a | ) | |
| INSIGNIA/ESG, INC.), HIGHGATE | ) | |
| HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff EXDS, Inc. (f/k/a Exodus Communications, Inc.) ("Debtor"), by its
attorneys, complains against Defendants CB Richard Ellis, Inc. (a/k/a Commercial Real Estate
Group, a/k/a Insignia/ESG, Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.) ("CBRE" or
"Insignia"), and Highgate Holdings, Inc. ("Highgate"), as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Amended Complaint pursuant to 28 U.S.C.
§ 1334, because it arises in and is related to the chapter 11 bankruptcy case, *In re EXDS, Inc.
(f/k/a Exodus Communications, Inc.) et al.*, Case No. 01-10539, pending in the United States
Bankruptcy Court for the District of Delaware.

2.      This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4.      Debtor is the reorganized debtor entity arising from the above-captioned bankruptcy case pursuant to the Second Amended Joint Plan of Reorganization of EXDS, Inc., and its Debtor Affiliates (the "Plan"), confirmed by the Court on June 5, 2002.  Among other things, the Plan effected a substantive consolidation into EXDS of the following co-debtor affiliates (the "Affiliate Debtors"): EXDS (ASI), Inc. (f/k/a Arca Systems, Inc.), EXDS (AISI), Inc. (f/k/a American Information Systems, Inc.), EXDS (CTSI), Inc. (f/k/a Cohesive Technology Solutions, Inc.), EXDS (GCI), Inc. (f/k/a GlobalCenter, Inc.), EXDS (GCHC), Inc. (f/k/a GlobalCenter Holding Co.), EXDS (KLI), Inc. (f/k/a KeyLabs, Inc.), Planet, Inc., and EXDS (SMI), Inc. (f/k/a Service Metrics, Inc.).  In light of the substantive consolidation, EXDS and the Affiliate Debtors are referred to collectively herein as "EXDS" or "Debtor."

5.      Debtor is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 4633 Old Ironsides Drive, Suite 320, Santa Clara, California 95054.

6.      On information and belief, defendant CBRE is a Delaware corporation, with its principal place of business located at 355 S. Grand Avenue, Suite 3100, Los Angeles, CA 90071. On information and belief Insignia merged with CBRE in July 2003.

7.      On information and belief, defendant Highgate is a Texas corporation, with its principal place of business located at 545 E. John Carpenter Freeway, Suite 1400, Irving, Texas 75062.

## FACTS COMMON TO ALL COUNTS

8.      In 1999, Debtor's predecessor and Affiliate, GlobalCenter, Inc. ("GlobalCenter") conducted a wide variety of internet hosting operations that required buildings, known as data

centers, to house servers, computer equipment, and other infrastructure necessary to conduct the web hosting operations. GlobalCenter operated various data centers across the country. In September 1999, GlobalCenter became a subsidiary of Global Crossing, Inc. ("Global Crossing").

9.      During this time, GlobalCenter regularly retained the services of commercial real estate brokers across the country to locate suitable commercial space for GlobalCenter to lease or purchase. GlobalCenter used several different brokers, including defendant Insignia, which later merged with CBRE.

10.     The brokers who located lease space for GlobalCenter received large brokerage commissions from the landlords of the buildings in which space was leased by GlobalCenter. Because GlobalCenter's leases were of substantial value and GlobalCenter was a significant client of the brokers, GlobalCenter frequently and customarily entered into agreements with its brokers under which GlobalCenter would receive a percentage of the brokerage commission paid to the brokers by the landlords.

11.     In Fall 1999, GlobalCenter decided that it needed substantial space in New York City for an additional data center. GlobalCenter retained Insignia to locate the New York rental space it required. In connection with that project, GlobalCenter and Insignia entered into an agreement under which Insignia agreed to pay GlobalCenter 50% of any commission that Insignia earned from the landlord in connection with a GlobalCenter lease of the landlord's property ("Original Commission-Sharing Agreement").

12.     By October 1999, Insignia and GlobalCenter had identified a potentially suitable property for lease located at 636 Eleventh Avenue in New York City ("NY2 Building"). The landlord of the NY2 Building was Infomart New York LLC ("Infomart"), an affiliate of

defendant Highgate.  On October 26, 1999, Insignia and Highgate entered into a contract that required Highgate to pay Insignia a brokerage commission based on the value of the GlobalCenter lease.  The actual commission amount was to be calculated in accordance with a commission schedule attached to the agreement and was due upon delivery by Insignia of an executed lease for the NY2 Building.

13.     On December 28, 1999, GlobalCenter, as tenant, and Infomart, as landlord, executed a lease for certain space at the NY2 Building (the "Lease").  Insignia served as the broker for the transaction.  Under the Lease, GlobalCenter agreed to lease approximately 126,717 square feet of rental space on the 8th, 9th, and 10th floors of the building beginning in 2000.  The Lease also required GlobalCenter later to expand into portions of the 7th and 11th floors, and provided GlobalCenter with an additional option to lease the 5th and 6th floors.

14.     Insignia earned commissions of $3,556,555 from Highgate in connection with the original Lease.

15.     On February 21, 2000, David Showerman, a representative of GlobalCenter, wrote to Snezana Anderson, a representative of Insignia, requesting Insignia to pay 50% of its commissions to GlobalCenter as the parties had agreed in the Original Commission-Sharing Agreement.  Insignia, however, did not pay GlobalCenter its share and the parties discussed the issue.

16.     In the meantime, GlobalCenter's relationship with Insignia continued in two significant respects.  First, GlobalCenter determined that it needed additional space in the NY2 Building and asked Insignia to act as broker in the negotiation of an amendment to the Lease to provide GlobalCenter with more space.  Second, GlobalCenter and Insignia entered into negotiations for an agreement between themselves under which Insignia would become a

"preferred provider" of real estate brokerage services across the country for GlobalCenter as GlobalCenter sought to expand its data center operations.

17.    On April 30, 2000, GlobalCenter and Infomart executed a First Amendment of Lease ("First Amendment").  Under the First Amendment, GlobalCenter agreed to lease nearly the entire NY2 Building, over 200,000 square feet, including floors 1-4, 5, 7, and 11.  Insignia served as broker for the First Amendment transaction.  Insignia earned a brokerage commission from Highgate of $7,557,023 in connection with the First Amendment transaction.

18.    On May 1, 2000, GlobalCenter and Insignia entered into a Preferred Provider Agreement ("Preferred Provider Agreement") (a copy of the Preferred Provider Agreement is attached at Tab 1 to this Amended Complaint).  Under the Preferred Provider Agreement, GlobalCenter retained Insignia as a broker on an exclusive basis for certain specified leasing transactions.  Those transactions included GlobalCenter's lease of space in the NY2 Building.  In exchange for GlobalCenter's business, Insignia agreed to pay GlobalCenter a percentage of any brokerage commissions it received from landlords in accordance with a schedule attached as Exhibit B to the Agreement.  Pursuant to the commission-sharing schedule set forth on Exhibit B of the Preferred Provider Agreement, Insignia was required to pay GlobalCenter 50% of any commissions it received in connection with a GlobalCenter lease of 100,000 square feet or more.

19.     Insignia earned a total of $11,123,578 in commissions from Highgate in connection with both the Lease transaction and the First Amendment transaction.

20.    Between February 2000 and May 24, 2000, GlobalCenter repeatedly demanded that Insignia remit 50% of its commissions to GlobalCenter as required by the Original Commission-Sharing Agreement and/or the Preferred Provider Agreement.  Insignia disputed the

amount owed to GlobalCenter and refused to remit any payment. The parties reached an impasse.

21.    On or about May 24, 2000, representatives of Insignia met with representatives of GlobalCenter at Global Crossing's headquarters in New York City to negotiate a solution to the commission-sharing dispute. The negotiations lasted most of the day. Ultimately, the parties reached a compromise of their dispute pursuant to which Insignia agreed to pay Global Center 35% of Insignia's total commission of $11,123,578 earned in connection with both the Lease and First Amendment (the "Compromise Agreement"), which amounted to $3,893,252 (the "Compromise Amount").

22.    On June 5, 2000, David Showerman, the GlobalCenter representative, wrote a letter to Snezana Anderson of Insignia memorializing the essential payment terms of the Compromise Agreement and asking that Insignia send Global Crossing a check for the Compromise Amount. (A copy of David Showerman's June 5, 2000 letter is attached at Tab 2 to this Amended Complaint.) Nevertheless, Insignia again refused to pay.

23.    In July 2000, David Showerman again issued demands to Insignia for payment of the Compromise Amount. Insignia acknowledged its agreement with GlobalCenter, but suggested, for the first time, that it had reached an agreement with Highgate under which GlobalCenter would be paid by Highgate instead of Insignia. Showerman immediately rejected Insignia's attempt to shift the payment obligation to Highgate and observed that the payment obligation derived from a contract between GlobalCenter and Insignia, not GlobalCenter and Highgate.

24.    Insignia ignored GlobalCenter's objection to its attempt to shift the payment obligation to Highgate. Instead, on August 16, 2000, Insignia entered into a letter agreement in

which Insignia attempted to assign to Highgate the obligation to pay GlobalCenter the $3,893,252 in shared commissions ("Assignment Agreement") (a copy of the Assignment Agreement is attached at Tab 3 to this Amended Complaint).  Among other things, the Assignment Agreement provided that: (a) Insignia and Highgate agreed that the balance of commissions still due from Highgate to Insignia as of August 16, 2000 totaled $7,557,022.78; and (b) Insignia waived its right to $3,893,252.42 of that $7,557,022.78 on the condition that Highgate would cause its affiliate and landlord, Infomart, to pay that amount directly to GlobalCenter.

25.     GlobalCenter did not at any time consent to Insignia's attempted assignment to Highgate of its obligation to pay GlobalCenter the Compromise Amount.

26.     Over the next several months, GlobalCenter made repeated demands for payment of the Compromise Amount.  Insignia repeatedly assured GlobalCenter that it would be paid by Highgate, but Highgate did not pay GlobalCenter.

27.     On November 21, 2000, Martin McCue, the General Counsel of Global Crossing, wrote to Insignia and again stated that GlobalCenter objected to Insignia's attempt to assign its payment obligation to Highgate, reminding Insignia that "[n]either GlobalCenter nor Global Crossing was a party to that agreement and it was entered into without our agreement or consent."  Although McCue offered to accept payment from Highgate should it be made, he made clear that "[i]f we do not receive the amount at issue from Insignia, ESG, Inc. or from Highgate Holdings, we will look first to you [Insignia] for payment of the amount due us, and we will proceed accordingly."

28.     On January 10, 2001, Debtor acquired GlobalCenter.

29.     Following Debtor's acquisition of GlobalCenter, Debtor continued to make demands upon Insignia and Highgate for payment of the Compromise Amount. Notwithstanding those demands, Debtor has never received payment from either Insignia or Highgate of any portion of the commission relating to NY2 Building pursuant to the Original Commission-Sharing Agreement, the Preferred Provider Agreement, or the Compromise Agreement. Instead, the commissions owed to Debtor have been unjustly retained by Insignia and/or Highgate to the detriment of Debtor and its creditors.

30.     On March 28, 2001, Debtor and Infomart entered into a Second Amendment of Lease.

31.     On September 26, 2001, Debtor filed with this Court a petition for relief under chapter 11 of Title 11 of the United States Code.

## COUNT I

### BREACH OF THE ORIGINAL COMMISSION-SHARING AGREEMENT
(against CBRE)

32.     Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

33.     Pursuant to the Original Commission-Sharing Agreement, Insignia agreed to pay to GlobalCenter 50% of the commissions earned by Insignia in connection with GlobalCenter's lease of space in the NY2 Building.

34.     The Original Commission-Sharing Agreement is a valid and enforceable contract.

35.     GlobalCenter performed its obligations under the Original Commission-Sharing Agreement.

36.     Insignia earned brokerage fees of at least $11,123,578 from the NY2 Building landlord and/or owner in connection with GlobalCenter's lease of space in the NY2 Building.

Pursuant to the Original Commission-Sharing Agreement, Insignia was required to pay 50% of those fees to GlobalCenter.

37.     Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce GlobalCenter's rights under the Original Commission-Sharing Agreement.

38.     Defendant CBRE is the successor-in-interest to Insignia and is responsible for Insignia's obligations under the Original Commission-Sharing Agreement.

39.     CBRE/Insignia has not paid GlobalCenter or Debtor any portion of the commissions it received relating to GlobalCenter's lease of space in the NY2 Building.  This failure has resulted in a material breach by CBRE/Insignia of the Original Commission-Sharing Agreement.

40.     As a direct and proximate result of CBRE/Insignia's breach of the Original Commission-Sharing Agreement, Debtor and its creditors have been, and continue to be, damaged in the amount due and owing by CBRE/Insignia.

Accordingly, Debtor is entitled to recover damages of at least $5,561,789 from CBRE resulting from CBRE/Insignia's breach of contract, plus interest and costs.

## COUNT II

### Alternatively, <u>BREACH OF THE PREFERRED PROVIDER AGREEMENT</u>
(against CBRE)

41.     Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

42.     Debtor pleads this Count II in the alternative to Count I.

43.     Pursuant to the Preferred Provider Agreement, Insignia agreed to pay GlobalCenter 50% of the commissions that Insignia earned in connection with GlobalCenter's lease of the NY2 Building.

44.     The Preferred Provider Agreement is a valid and enforceable contract.

45.     GlobalCenter performed its obligations under the Preferred Provider Agreement.

46.     Insignia earned at least $11,123,578 in brokerage commissions from the NY2 Building landlord and/or owner in connection with GlobalCenter's lease of space in the NY2 Building.  Pursuant to the Preferred Provider Agreement, Insignia was required to pay 50% of those commissions to GlobalCenter.

47.     Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce GlobalCenter's rights under the Preferred Provider Agreement.

48.     Defendant CBRE is the successor-in-interest to Insignia and is responsible for Insignia's obligations under the Preferred Provider Agreement.

49.     CBRE/Insignia has not paid GlobalCenter or Debtor any portion of the commissions it received relating to GlobalCenter's lease of space in the NY2 Building.  This failure has resulted in a material breach by CBRE/Insignia of the Preferred Provider Agreement.

50.     As a direct and proximate result of CBRE/Insignia's breach of the Preferred Provider Agreement, Debtor and its creditors have been, and continue to be, damaged in the amount due and owing by CBRE/Insignia.

Accordingly, Debtor is entitled to recover damages of at least $5,561,790, plus interest and costs, for CBRE/Insignia's breach of the Preferred Provider Agreement.

### COUNT III

### Alternatively, <u>BREACH OF THE COMPROMISE AGREEMENT</u>
(against CBRE)

51.     Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

52.     Debtor pleads this Count III in the alternative to Counts I-II above.

53.     Pursuant to the Compromise Agreement, Insignia agreed to pay to GlobalCenter 35% of the total commissions earned by Insignia in connection with both the original Lease transaction and the First Amendment transaction.

54.     The Compromise Agreement is a valid and enforceable contract.

55.     GlobalCenter performed its obligations under the Compromise Agreement.

56.     Insignia earned total brokerage fees of at least $11,123,578 from the NY2 Building landlord and/or owner in connection with the Lease transaction and the First Amendment transaction.  Pursuant to the Compromise Agreement, Insignia was required to pay 35% of those fees to GlobalCenter, or $3,893,252.

57.     Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce GlobalCenter's rights under the Compromise Agreement.

58.     Defendant CBRE is the successor-in-interest to Insignia and is responsible for Insignia's obligations under the Compromise Agreement.

59.     CBRE/Insignia has not paid GlobalCenter or Debtor any portion of the commissions it received relating to the Lease transaction or the First Amendment transaction, including the Compromise Amount.  This failure has resulted in a material breach by CBRE/Insignia of the Compromise Agreement.

60.     As a direct and proximate result of CBRE/Insignia's breach of the Compromise Agreement, Debtor and its creditors have been, and continue to be, damaged in the amount due and owing by CBRE/Insignia.

Accordingly, and as an alternative to the damages sought in Counts I and II, Debtor is entitled to recover damages of at least $3,893,252 from CBRE resulting from CBRE/Insignia's breach of contract, plus interest and costs.

## COUNT IV

### Alternatively, <u>BREACH OF THE ASSIGNMENT AGREEMENT</u>
(against Highgate)

61.    Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

62.    Debtor pleads this Count IV in the alternative to Counts I-III above.

63.    Insignia and Highgate are parties to the Assignment Agreement, which constitutes a valid and binding contract.

64.    Pursuant to the Assignment Agreement, Highgate agreed to pay GlobalCenter $3,893,252, which is the amount that Insignia had agreed to pay GlobalCenter under the Compromise Agreement.  The $3,893,252 constitutes the 35% portion of the total brokerage commission earned by Insignia in connection with the original Lease transaction and the First Amendment transaction.

65.    GlobalCenter was the intended third-party beneficiary of the Assignment Agreement between Insignia and Highgate.  The contractual benefit to GlobalCenter was immediate, and the parties incurred a duty to compensate GlobalCenter if it did not receive the benefit.

66.    Debtor is the successor-in-interest to GlobalCenter.  If the Assignment Agreement constitutes a valid assignment of Insignia's payment obligation to Debtor, Debtor is entitled to enforce GlobalCenter's rights under the Assignment Agreement.

67.    Highgate did not pay the $3,893,252.42 to Debtor or GlobalCenter as required by the Assignment Agreement.  Highgate's failure to pay this amount to Debtor or GlobalCenter constitutes a material breach of the Assignment Agreement between Highgate and Insignia.

68.     As a direct and proximate result of Highgate's breach of the Assignment Agreement, Debtor and its creditors have been, and continue to be, damaged in the amount of $3,893,252.

Accordingly, Debtor, as an intended third-party beneficiary, is entitled to recover damages from Highgate resulting from Highgate's breach of the Assignment Agreement in an amount to be determined at trial, but not less than $3,893,252, plus interest and costs.

### COUNT V

### Alternatively, <u>UNJUST ENRICHMENT</u>
(against CBRE)

69.     Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

70.     Debtor pleads this Count V in the alternative to Counts I-IV herein.

71.     During 1999 and 2000, GlobalCenter retained Insignia as a real estate broker and permitted it to act as GlobalCenter's agent in connection with the original Lease transaction and the First Amendment transaction.  GlobalCenter retained Insignia for those leasing transactions, and continued to use Insignia for other leasing transactions, only because Insignia had agreed to share a percentage of its commissions with GlobalCenter.  GlobalCenter's retention of Insignia provided Insignia with a unique opportunity to earn substantial brokerage commissions from landlords and/or building owners by finding space for GlobalCenter to lease for its operations.

72.     By retaining Insignia, as well as by entering into the Lease and First Amendment, GlobalCenter conferred an actual benefit on Insignia because Insignia earned at least $11,123,578.34 in commissions from the NY2 Building landlord and/or owner.  GlobalCenter conferred this benefit on Insignia only because Insignia agreed to share a percentage of its commissions with GlobalCenter.

73.     Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce the equitable rights and remedies of GlobalCenter.

74.     CBRE is the successor-in-interest to Insignia and is responsible for the actions and liabilities of Insignia.

75.     Because CBRE/Insignia failed to pay Debtor or GlobalCenter the agreed percentage of its commissions, and instead retained or otherwise received the benefit of those commissions, CBRE/Insignia has been unjustly enriched at Debtor's expense and consequently has harmed Debtor and its creditors in an amount to be proven at trial, but not less than $5,561,789.

Accordingly, Debtor is entitled to recover damages from CBRE/Insignia resulting from Insignia's unjust enrichment in an amount to be determined at trial, but not less than $5,561,789, plus interest and costs.

## COUNT VI

### Alternatively, UNJUST ENRICHMENT
(against Highgate)

76.     Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

77.     Debtor pleads this Count VI in the alternative to Counts I-V herein.

78.     During 1999 and 2000, GlobalCenter retained Insignia as a real estate broker and permitted it to act as GlobalCenter's agent in connection with the original Lease transaction and the First Amendment transaction.

79.     In December 1999 and April 2000, GlobalCenter entered into, respectively, the Lease and the First Amendment with Infomart, the landlord of the building and an affiliate of defendant Highgate.  GlobalCenter entered into the Lease and First Amendment only because

14

Highgate had agreed to pay Insignia a large brokerage commission on the deal and Insignia, in turn, had agreed to pay GlobalCenter a percentage of that commission.

80.     By entering into the Lease and the First Amendment, GlobalCenter conferred an actual benefit on Highgate.

81.     Pursuant to Highgate's separate commission agreements with Insignia, Highgate owed Insignia at least $11,123,578 in commissions in connection with the Lease and First Amendment transactions.  In August 2000, Insignia and Highgate entered into the Assignment Agreement, which purported to relieve Highgate of the obligation to pay $3,893,252 of that amount on the condition that Highgate would cause Infomart to pay the $3,893,252 directly to GlobalCenter.

82.     Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce the equitable rights and remedies of GlobalCenter.

83.     Neither Highgate nor its affiliate, Infomart, has paid Debtor or GlobalCenter the $3,893,252 of Insignia's commissions that Highgate agreed to pay directly to Debtor or GlobalCenter.

84.     Because Highgate has failed to pay Debtor or GlobalCenter the $3,893,252 in commissions, and has instead retained those commissions, Highgate has been unjustly enriched at Debtor's expense and consequently has harmed Debtor and its creditors in an amount to be proven at trial, but not less than $3,893,252.

Accordingly, Debtor is entitled to recover damages from Highgate resulting from Highgate's unjust enrichment in an amount to be determined at trial, but not less than $3,893,252, plus interest and costs.

## COUNT VII

### Alternatively, <u>PROMISSORY ESTOPPEL</u>
(against CBRE)

85.    Debtor realleges and incorporates herein Paragraph Nos. 1-31, above.

86.    Debtor pleads this Count VII in the alternative to Counts I-VI herein.

87.    Insignia made clear and unambiguous promises to GlobalCenter in the Fall 1999, on May 1, 2000, on May 24, 2000, and at other times after May 24, 2000, that Insignia would pay to GlobalCenter a portion of any commission earned by Insignia from Highgate relating to the Lease transaction or the First Amendment transaction.

88.    Debtor is the successor-in-interest to GlobalCenter and is entitled to enforce GlobalCenter's equitable rights.

89.    Debtor and GlobalCenter reasonably and foreseeably relied on Insignia's promises by entering into amendments to the Lease with Infomart and by continuing to use Insignia as a preferred broker for Debtor and GlobalCenter's real estate business.

90.    Debtor and GlobalCenter have sustained damage in reliance on that promise because Insignia failed to remit the agreed-upon portion of earned commissions.

91.    CBRE is the successor-in-interest to Insignia and is responsible for Insignia's actions and liabilities.

92.    Accordingly, CBRE/Insignia is estopped from denying that it owes Debtor the agreed-upon portions of commissions earned from Highgate in connection with the Lease transaction and the First Amendment transaction, and Debtor is entitled to recover damages from Insignia in an amount to be proven at trial, but not less than $5,561,789, plus interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Debtor respectfully requests that the Court:

A.    Pursuant to Count I of this First Amended Complaint, enter judgment in favor of Debtor and against CBRE/Insignia for breach of the Original Commission-Sharing Agreement in an amount to be proven at trial, but not less than $5,561,789;

B.    Alternatively, pursuant to Count II of this First Amended Complaint, enter judgment in favor of Debtor and against CBRE/Insignia for breach of the Preferred Provider Agreement in an amount to be determined at trial, but not less than $5,561,789, plus interest and costs;

D.    Alternatively, pursuant to Count III of this First Amended Complaint, enter judgment in favor of Debtor and against CBRE/Insignia for breach of the Compromise Agreement in an amount to be proven at trial, but not less than $3,893,252, plus interest and costs;

E.    Alternatively, pursuant to Count IV of this First Amended Complaint, enter judgment in favor of Debtor and against Highgate for breach of the Assignment Agreement in an amount to be proven at trial, but not less than $3,893,252, plus interest and costs;

F.    Alternatively, pursuant to Count V of this First Amended Complaint, enter judgment in favor of Debtor and against CBRE/Insignia for unjust enrichment in an amount to be determined at trial, but not less than $5,561,789, plus interest and costs;

G.    Alternatively, pursuant to Count VI of this First Amended Complaint, enter judgment in favor of Debtor and against Highgate for unjust enrichment in an amount to be determined at trial, but not less than $3,893,252, plus interest and costs;

H.    Alternatively, pursuant to Count VII of this First Amended Complaint, enter judgment in favor of Debtor and against CBRE/Insignia for promissory estoppel in an amount to be determined at trial, but not less than $5,561,789, plus interest and costs; and

I.    Grant Debtor such further relief as the Court may deem equitable and just.

Dated:  January 20, 2006                    Respectfully submitted,

                                            BOUCHARD MARGULES & FRIEDLANDER


                                            /s/ Joanne P. Pinckney

CO-COUNSEL:                                 David J. Margules (#2254)
JENNER & BLOCK LLP                          Joanne P. Pinckney (#3344)
Jeffrey A. Koppy                            222 Delaware Avenue, Suite 1400
Sally K. Sears Coder                        Wilmington, DE  19801
Daniel S. Dooley                            (302) 573-3500
One IBM Plaza                               (302) 573-3501 (Facsimile)
Chicago, IL  60611                          *Attorneys for Plaintiffs/Debtors*
(312) 222-9350                              *EXDS, Inc. (f/k/a Exodus Communications, Inc.)*
(312) 840-7642 (Facsimile)                  *and the EXDS Plan Administrator*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| EXDS, INC. (f/k/a EXODUS | § | **CASE NO. 01-10539** |
| COMMUNICATIONS, INC.), *et al.,* | § | **Jointly Administered (PJW)** |
| | § | |
| Debtors. | § | |

_____

| | | |
|---|---|---|
| EXDS, INC. (f/k/a EXODUS | § | |
| COMMUNICATIONS, INC.), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 03-56185** |
| | § | |
| CB RICHARD ELLIS, INC. (a/k/a CB | § | **JURY TRIAL DEMANDED** |
| Commerical Real Estate Group a/k/a | § | |
| Insignia/ESG, Inc. n/k/a CB Richard | § | |
| Ellis Real Estate Service, Inc.), and | § | |
| HIGHGATE HOLDINGS, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT HIGHGATE HOLDINGS, INC.'S
## ANSWER TO FIRST AMENDED COMPLAINT

Defendant **HIGHGATE HOLDINGS, INC.** ("Highgate") answers the First Amended Complaint (the "Complaint") filed by Plaintiff EXDS, Inc. (f/k/a Exodus Communications, Inc.) ("EXDS") on January 20, 2006.

1.    Highgate admits the allegations in paragraph 1 of the Complaint.

2.    Highgate denies the allegations in paragraph 2 of the Complaint that this adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

3.    Highgate admits the allegations in paragraph 3 of the Complaint.

4.    Highgate admits the allegations in paragraph 4 of the Complaint.

5.      Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint.

6.      Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

7.      Highgate admits the allegations in paragraph 7 of the Complaint.

8.      Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint.

9.      Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12.     Highgate admits that infomart new york llc was the landlord of the property located at 636 Eleventh Avenue during the time period at issue as alleged in paragraph 12 of the Complaint.  Highgate further admits that it entered an agreement with Insignia dated October 26, 1999, but Highgate denies that EXDS has correctly described the agreement in paragraph 12 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Complaint.

13.     Highgate admits the allegations in the first two sentences of paragraph 13 of the Complaint.  Highgate denies that EXDS has correctly described the terms of the Lease in the third and fourth sentences of paragraph 13 of the Complaint.

14.     Highgate denies the allegations in paragraph 14 of the Complaint, but, on

information and belief, Highgate admits that infomart new york llc paid Insignia $3,566,555.56 in connection with the original Lease.

15.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.    Highgate admits the allegations in the first and third sentences of paragraph 17 of the Complaint. Highgate denies that EXDS has correctly described the first amendment in the second sentence of paragraph 17 of the Complaint. With regard to the allegations in the last sentence of paragraph 17 of the Complaint, Highgate admits that the brokerage commission for the first amendment was $7,557,022.78. Highgate denies the remaining allegations in paragraph 17 of the Complaint.

18.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.    Highgate admits the allegations in paragraph 19 of the Complaint, except that the amount of the commission was $11,123,578.34, and Insignia's right to payment was subject to a later modification or novation or other defenses.

20.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24.    Highgate admits that it executed the letter agreement attached to the Complaint behind Tab 3 as alleged in paragraph 24 of the Complaint, but Highgate denies that EXDS has correctly described the terms of the agreement.   Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint.

25.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

26.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28.    Highgate admits that the Debtor acquired GlobalCenter as alleged in paragraph 28 of the Complaint.   Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 of the Complaint.

29.    Highgate denies the allegations in paragraph 29 of the Complaint.

30.    Highgate admits the allegations in paragraph 30 of the Complaint.

31.    Highgate admits the allegations in paragraph 31 of the Complaint.

32.    In response to paragraph 32 of the Complaint Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

33.    Highgate lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 33 of the Complaint.

34.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint.

35.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Complaint.

36.    Highgate admits the allegations in the first sentence of paragraph 36 of the Complaint, except that Insignia's right to payment was subject to a later modification or novation or other defenses.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint.

37.    Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 37 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37 of the Complaint.

38.    Highgate admits that Defendant CBRE is the successor-in-interest to Insignia as alleged in paragraph 38 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 of the Complaint.

39.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint.

40.    Paragraph 40 of the Complaint contains a legal conclusion to which no response is required.

41.    In response to paragraph 41 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

42.    The allegations in paragraph 42 of the Complaint do not require a response.

43.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint.

44.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint.

46.     Highgate admits the allegations in the first sentence of paragraph 46 of the Complaint, except that Insignia's right to payment was subject to a later modification or novation or other defenses.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 46 of the Complaint.

47.     Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 47 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 of the Complaint.

48.     Highgate admits that Defendant CBRE is the successor-in-interest to Insignia as alleged in paragraph 48 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 of the Complaint.

49.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint.

50.     Paragraph 50 of the Complaint contains a legal conclusion to which no response is required.

51.     In response to paragraph 51 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

52.    The allegations in paragraph 52 of the Complaint do not require a response.

53.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint.

54.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint.

55.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56.    Highgate admits the allegations in the first sentence of paragraph 56 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56 of the Complaint.

57.    Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 57 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57 of the Complaint.

58.    Highgate admits that Defendant CBRE is the successor-in-interest to Insignia as alleged in paragraph 58 of the Complaint.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 58 of the Complaint.

59.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint.

60.    Paragraph 60 contains a legal conclusion to which no response is required.

61.    In response to paragraph 61 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

62.    The allegations in paragraph 62 of the Complaint do not require a response.

63.     Highgate admits that it and Insignia executed the agreement attached to the Complaint behind Tab 3 as alleged in paragraph 63 of the Complaint. Highgate further admits that the agreement was valid and binding when executed, but Highgate denies that EXDS has the right to enforce the agreement in light of the defenses asserted below.

64.     Highgate denies the allegations in paragraph 64 of the Complaint.

65.     Highgate denies the allegations in paragraph 65 of the Complaint.

66.     Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 66 of the Complaint, but denies that the Debtor has a present right to enforce the agreement attached to the Complaint behind Tab 3.

67.     Highgate denies the agreement attached to the Complaint behind Tab 3 required Highgate to pay money to GlobalCenter as alleged in the first sentence of paragraph 67 of the Complaint. Highgate denies the remaining allegations in paragraph 67 of the Complaint.

68.     Highgate denies the allegations in paragraph 68 of the Complaint.

69.     In response to paragraph 69 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

70.     The allegations in paragraph 70 of the Complaint do not require a response.

71.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint.

72.     Highgate admits that Insignia earned commissions as a result of GlobalCenter entering the Lease and the First Amendment as alleged in paragraph 72 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 of the Complaint.

73.    Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 73 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 73 of the Complaint.

74.    Highgate admits that Defendant CBRE is the successor-in-interest to Insignia as alleged in paragraph 74 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74 of the Complaint.

75.    Paragraph 75 contains a legal conclusion to which no response is required.

76.    In response to paragraph 76 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

77.    The allegations in paragraph 77 of the Complaint do not require a response.

78.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 of the Complaint.

79.    Highgate admits that GlobalCenter entered the Lease in December of 1999 and the First Amendment in April of 2000 with infomart new york llc, as landlord, as alleged in the first sentence of paragraph 79 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 79 of the Complaint.

80.    Highgate denies the allegations in paragraph 80 of the Complaint.

81.    Highgate denies the allegations in the first sentence of paragraph 81 of the Complaint. Highgate admits that it and Insignia executed the agreement attached to the Complaint behind Tab 3 in August of 2000 as alleged in the second sentence of paragraph 81 of the Complaint, but Highgate denies that EXDS has correctly described the terms of the

agreement.

82.     Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 82 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 82 of the Complaint.

83.     Highgate denies that it made an agreement to pay cash to GlobalCenter as alleged in paragraph 83 of the Complaint. Highgate further denies that it made an agreement that infomart new york llc would pay cash to GlobalCenter as alleged in paragraph 83 of the Complaint. Highgate denies the remaining allegations in paragraph 83 of the Complaint.

84.     Highgate denies the allegations in paragraph 84 of the Complaint.

85.     In response to the allegations in paragraph 85 of the Complaint, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 31 above and incorporates those paragraphs herein by reference.

86.     The allegations in paragraph 86 of the Complaint do not require a response.

87.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint.

88.     Highgate admits that the Debtor is the successor-in-interest to GlobalCenter as alleged in paragraph 88 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 of the Complaint.

89.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Complaint.

90.     Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint.

91.     Highgate admits that Defendant CBRE is the successor-in-interest to Insignia as

alleged in paragraph 91 of the Complaint. Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 of the Complaint.

92.     Paragraph 92 contains a legal conclusion to which no response is required.

93.     Highgate denies that EXDS is entitled to any of the relief requested in the Prayer of the Complaint.

94.     Highgate denies all allegations in the Complaint not specifically admitted above.

## AFFIRMATIVE DEFENSES

95.     The allegations of the Complaint fail to state a claim against Highgate upon which relief can be granted.

96.     Plaintiff is not entitled to any equitable relief because of its unclean hands.

97.     Plaintiff's claims are barred because Plaintiff rejected the Lease, as amended.

98.     Plaintiff's claims are barred by Plaintiff's prior material breach.

99.     Plaintiff's claims are barred by offset and/or recoupment.

100.    Plaintiff's claims are barred by the doctrine of abandonment by conduct.

101.    Plaintiff's claims are barred by *res judicata*.

102.    Plaintiff's claims are barred by accord and satisfaction.

103.    Plaintiff's claims are barred by frustration of purpose.

104.    Plaintiff's claims are barred in whole or in part by estoppel by contract.

105.    Plaintiff's claims are barred in whole or in part by failure of consideration.

106.    Plaintiff's claims are barred in whole or in part by illegality.

107.    Plaintiff cannot obtain the requested relief because of its failure to join indispensable parties.

108.    Plaintiff's claims are barred by waiver.

109.  Plaintiff's claims are barred by release.

110.  Plaintiff's claims are barred by excuse.

111.  Plaintiff's claims are barred by novation and/or modification.

**WHEREFORE**, Highgate prays:

(i)  that Plaintiff's claims be dismissed;

(ii)  that judgment be entered for Highgate; and

(iii)  that Highgate be granted any other or further relief to which it may be entitled.

Respectfully submitted,

**PEPPER HAMILTON LLP**

By: _____
    David M. Fournier
    Delaware No. 2812

Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19801
Telephone:  (302) 777-6500
Telecopier:  (302) 421-8390

and

**BELL NUNNALLY & MARTIN LLP**
Beverly A. Whitley (Texas Bar No. 21374500)
John R.W. Fugitt (Texas Bar No. 24036604)
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas  75204-2429
Telephone:  (214) 740-1400
Telecopier:  (214) 740-1499

**ATTORNEYS FOR DEFENDANT
HIGHGATE HOLDINGS, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXDS, INC. (f/k/a/ EXODUS | ) | Case No. 01-10539 |
| COMMUNICATIONS, INC.), et al., | ) | |
| | ) | JOINTLY ADMINISTERED |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EXDS, INC. (f/k/a EXODUS | ) | |
| COMMUNICATIONS, INC.), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 03 – 56185 |
| | ) | |
| CB RICHARD ELLIS, INC. (a/k/a CB | ) | JURY TRIAL DEMANDED |
| COMMERCIAL REAL ESTATE GROUP, a/k/a | ) | |
| INSIGNIA/ESG, INC., n/k/a CB RICHARD | ) | |
| ELLIS REAL ESTATE SERVICES, INC.), | ) | |
| HIGHGATE HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant CB Richard Ellis Real Estate Services, Inc. f/k/a Insignia/ESG, Inc. sued

herein as CB Richard Ellis, Inc. (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG,

Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.) ("Defendant" or "CBRE"), by its

undersigned counsel, for its answer and counterclaims to the first amended complaint of EXDS,

Inc. (f/k/a Exodus Communications, Inc.) ("GlobalCenter" or "Plaintiff") and cross-claims

against defendant Highgate Holdings, Inc. ("Highgate"), alleges as follows:

## JURISDICTION AND VENUE

1.      Denies each and every allegation contained in paragraph 1.

2.    Denies each and every allegation contained in paragraph 2.

3.    Denies each and every allegation contained in paragraph 3.

## PARTIES

4.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4, except admits that plaintiff refers collectively to EXDS and the Affiliated Debtors as "EXDS."

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6.    Admits the allegations contained in paragraph 6.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

## FACTS COMMON TO ALL COUNTS

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.

9.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9, except admits that GlobalCenter from time to time retained Insignia to perform commercial real estate brokerage services.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10, and respectfully refers to the applicable brokerage agreements for all of the terms, provisions and conditions contained therein.

2

11.     Denies each and every allegation contained in paragraph 11, except admits that in or about Fall 1999 GlobalCenter retained Insignia to perform real estate brokerage services which included assisting GlobalCenter in locating rental space in New York.

12.     Admits the allegations contained in paragraph 12 and respectfully refers the Court to the referenced contract for all the terms, provisions and conditions contained therein.

13.     Admits the allegations contained in paragraph 13 and respectfully refers the Court to the referenced contract for all the terms, provisions and conditions contained therein.

14.     Admits the allegation contained in paragraph 14.

15.     Denies each and every allegation contained in paragraph 15.

16.     Admits the allegation contained in paragraph 16.

17.     Admits the allegation contained in paragraph 17 and respectfully refers the Court to the First Amendment for all the terms, provisions and conditions contained therein.

18.     Denies each and every allegation contained in paragraph 18 except admits that GlobalCenter and Insignia entered into the Preferred Provider Agreement, and respectfully refers the Court to the Preferred Provider Agreement for all the terms, provisions and conditions contained therein.

19.     Admits the allegation contained in paragraph 19.

20.     Denies each and every allegation contained in paragraph 20.

21.     Denies each and every allegation contained in paragraph 21 except admits that: (i) representatives of Insignia, representatives of GlobalCenter and others met at Global Crossing's headquarters on May 24, 2000; (ii) the negotiations last most of the day, and; (iii) the parties reached an agreement whereby Insignia conditionally agreed to cause GlobalCenter's landlord to

3

pay GlobalCenter 35% of Insignia's commission in connection with the Lease and First Amendment.

22.    Denies each and every allegation contained in paragraph 22 and respectfully refers the Court to the June 5, 2000 letter for all the terms, provisions and conditions contained therein.

23.    Denies each and every allegation contained in paragraph 23.

24.    Denies each and every allegation contained in paragraph 24, except admits that by letter agreement dated August 16, 2000 (the "Letter Agreement"), Insignia waived all right, title and interest in and to the sum of $3,983,252.42 out of the total commission (the "Waiver Amount") on the express condition that Highgate or Infomart contribute an additional sum to GlobalCenter on account of GlobalCenter's costs of building out its space in an amount equal to the Waiver Amount, and respectfully refers the Court to the Letter Agreement for all the terms, provisions and conditions contained therein.

25.    Denies each and every allegation contained in paragraph 25.

26.    Denies each and every allegation contained in paragraph 26, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that Highgate failed to pay the Waiver Amount to GlobalCenter.

27.    Denies each and every allegation contained in paragraph 27 and respectfully refers the Court to the referenced November 21, 2000 letter for all the terms, provisions and conditions contained therein.

28.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

29.    Denies each and every allegation contained in paragraph 29, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that Highgate failed to pay the Waiver Amount to GlobalCenter.

30.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

### COUNT I

32.    Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

33.    Denies each and every allegation contained in paragraph 33.

34.    Denies each and every allegation contained in Paragraph 34.

35.    Denies each and every allegation contained in Paragraph 35 and avers that no purported "Original Commission-Sharing Agreement" was ever entered.

36.    Denies each and every allegation contained in Paragraph 36, except admits that Insignia earned a commission in connection with GlobalCenter's lease of space in the NY2 Building.

37.    Denies each and every allegation contained in Paragraph 37, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Debtor is the successor-in-interest to GlobalCenter."

38.    Denies each and every allegation contained in Paragraph 38.

39.    Denies each and every allegation contained in Paragraph 39.

40.    Denies each and every allegation contained in Paragraph 40.

## COUNT II

41.    Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

42.    Paragraph 42 states a legal conclusion to which an answer is not required.

43.    Denies each and every allegation contained in paragraph 43 and respectfully refers the Court to the Preferred Provider Agreement for all the terms, provisions and conditions contained therein.

44.    Denies each and every allegation contained in paragraph 44.

45.    Denies each and every allegation contained in paragraph 45.

46.    Denies each and every allegation contained in paragraph 46, except admits that Insignia earned a commission in connection with GlobalCenter's lease of space in the NY2 Building.

47.    Denies each and every allegation contained in paragraph 47, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Debtor is the successor-in-interest to GlobalCenter."

48.    Denies each and every allegation contained in Paragraph 48.

49.    Denies each and every allegation contained in Paragraph 49.

50.    Denies each and every allegation contained in Paragraph 50.

## COUNT III

51.    Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

52.    Paragraph 52 states a legal conclusion to which an answer is not required.

53.    Denies each and every allegation contained in paragraph 53.

54.    Denies each and every allegation contained in paragraph 54.

55.    Denies each and every allegation contained in paragraph 55.

6

56.     Denies each and every allegation contained in paragraph 56, except admits that Insignia earned a commission in connection with GlobalCenter's lease of space in the NY2 Building.

57.     Denies each and every allegation contained in paragraph 57, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Debtor is the successor-in-interest to GlobalCenter."

58.     Denies each and every allegation contained in paragraph 58.

59.     Denies each and every allegation contained in paragraph 59.

60.     Denies each and every allegation contained in paragraph 60.

## COUNT IV

61.     Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

62.     Paragraph 62 states a legal conclusion to which an answer is not required.

63.     Answering paragraph 63, admits that Insignia and Highgate are parties to the "assignment Agreement," and avers that by reason of Highgate and its affiliates' failure to pay the Waiver Amount to GlobalCenter, the express condition to CBRE's waiver of all right, title and interest in and to the Waiver Amount was never was performed, and CBRE's waiver is therefore a nullity *nunc pro tunc*.

64.     Admits the allegations contained in paragraph 64, except denies that Insignia had agreed to pay GlobalCenter $3,893,252 under the purported Compromise Agreement.

65.     Paragraph 65 states a legal conclusion to which an answer is not required.

66.     Denies each and every allegation contained in paragraph 66 except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Debtor is the successor-in-interest to GlobalCenter."

67.     Answering paragraph 67, denies knowledge or information sufficient to form a belief as to the truth of the allegation that Highgate did not pay the $3,893,252.42 to Debtor or GlobalCenter, and admits that if Highgate failed to pay such amount that such failure constitutes a material breach of the Assignment Agreement.

68.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68.

## COUNT V

69.     Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

70.     Paragraph 70 states a legal conclusion to which an answer is not required.

71.     Denies each and every allegation contained in paragraph 17, except admits that during 1999 and 2000 GlobalCenter retained Insignia to perform real estate brokerage services.

72.     Denies each and every allegation contained in paragraph 72, except admits that Insignia earned a commission in connection with GlobalCenter's lease of space in the NY2 Building.

73.     Denies each and every allegation contained in paragraph 73, except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Debtor is the successor-in-interest to GlobalCenter."

74.     Denies each and every allegation contained in paragraph 74 except admits that CB Richard Ellis Real Estate Services, Inc. was formerly known as Insignia/ESG, Inc.

75.     Denies each and every allegation contained in paragraph 75.

## COUNT VI

76.     Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

DEL-FS1\154091v01

77.    Paragraph 77 states a legal conclusion to which an answer is not required.

78.    Admits the allegations contained in paragraph 78.

79.    Denies each and every allegation contained in paragraph 79, except admits that GlobalCenter entered into the Lease and First Amendment.

80.    Denies each and every allegation contained in paragraph 80, and respectfully refers the Court to the Lease and First Amendment for all the terms, provisions and conditions contained therein.

81.    Admits the allegations contained in paragraph 81 and respectfully refers the Court to the Assignment Agreement for all the terms, provisions and conditions contained therein.

82.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82.

83.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83.

84.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84.

<strong><u>COUNT VII</u></strong>

85.    Repeats and realleges paragraphs 1 through 31 above as if fully set forth herein.

86.    Paragraph 86 states a legal conclusion to which an answer is not required.

87.    Denies each and every allegation contained in paragraph 87.

88.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88.

89.    Denies each and every allegation contained in paragraph 89.

90.    Denies each and every allegation contained in paragraph 90.

9

91.    Denies each and every allegation contained in paragraph 91 except admits that CB

Richard Ellis Real Estate Services, Inc. was formerly known as Insignia/ESG, Inc.

92.    Denies each and every allegation contained in paragraph 92.

### FIRST AFFIRMATIVE DEFENSE

93.    Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

94.    Failure of consideration.

### THIRD AFFIRMATIVE DEFENSE

95.    Failure to comply with a condition precedent.

### FOURTH AFFIRMATIVE DEFENSE

96.    Waiver and estoppel.

### FIFTH AFFIRMATIVE DEFENSE

97.    Statute of frauds.

### SIXTH AFFIRMATIVE DEFENSE

98.    Parole evidence rule.

### SEVENTH AFFIRMATIVE DEFENSE

99.    Frustration of purpose.

### EIGHTH AFFIRMATIVE DEFENSE

100.    Failure to join an indispensable party.

## NINTH AFFIRMATIVE DEFENSE

101.    Payment.

## TENTH AFFIRMATIVE DEFENSE

102.    Novation.

## ELEVENTH AFFIRMATIVE DEFENSE

103.    Impossibility of performance.

## TWELFTH AFFIRMATIVE DEFENSE

104.    Lack of subject matter jurisdiction.

## THIRTEENTH AFFIRMATIVE DEFENSE

105.    Plaintiff's claims for equitable relief are barred by its unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

106.    Prior material breach.

## FIRST CROSS-CLAIM AGAINST DEFENDANT HIGHGATE

107.    CBRE is a Delaware corporation, with its principal place of business located in California.

108.    Upon information and belief as to the truth thereof, incorporated herein by reference are paragraphs 4, 5 and 7 of the first amended complaint.

109.    Pursuant to a written contract dated October 26, 1999 (the "October 26 Commission Agreement") by and between CBRE and Highgate, Highgate agreed to pay a brokerage commission to CBRE upon CBRE's delivery to Highgate of an executed lease for a

11

designated portion of real property located at 636 11th Avenue, New York, New York (the "Original Premises").

110.    GlobalCenter entered into a certain lease agreement (the "Original Lease") dated as of December 28, 1999, between an affiliate of Highgate, Infomart New York LLC ("Infomart"), as landlord, and GlobalCenter, as tenant, for the Original Premises.

111.    Pursuant to a written contract dated March 7, 2000 (the "March 7 Commission Agreement" and, together with the October 26 Commission Agreement, the "Commission Agreement"), CBRE (by its predecessor) entered into a contract with Highgate pursuant to which Highgate agreed to pay a brokerage commission to CBRE upon CBRE's delivery to Highgate of an executed lease amendment (the "Amendment") for additional premises at 636 11th Avenue, New York, NY (the "Expansion Premises").

112.    By reason of GlobalCenter's execution and delivery of the Original Lease and the Amendment, there became due from Highgate to CBRE a commission in the amount of $11,123,578.34 (the "Total Commission").

113.    On or about May 24, 2000, GlobalCenter and CBRE agreed that CBRE would conditionally waive 35% of the Total Commission on condition that Highgate cause Infomart to pay an amount to GlobalCenter equal to 35% of the Total Commission.

114.    On or about May 24, 2000, Highgate orally agreed to cause Infomart to pay an amount to GlobalCenter equal to 35% of the Total Commission.

115.    By the Letter Agreement dated August 16, 2000, CBRE waived all right, title and interest in and to the sum of $3,983,252.42 out of the Total Commission (the Waiver Amount) on the express condition that Highgate or Infomart contribute a sum equal to the Waiver Amount on account of GlobalCenter's costs of building out its space.

116.    At no time subsequent to August 16, 2000 did GlobalCenter take possession or occupy the Original Premises or the Expansion Premises.

117.    Upon information and belief, at no time did GlobalCenter incur any costs of building out the Original Premises or the Expansion Premises.

118.    Upon information and belief, Highgate and its affiliates have failed to pay the Waiver Amount to GlobalCenter.

119.    By reason of Highgate and its affiliates' failure to contribute a sum equal to the Waiver Amount on account of GlobalCenter's costs of building out its space, the express condition to CBRE's waiver of all right, title and interest in and to the Waiver Amount was never was performed, and CBRE's waiver is therefore a nullity *nunc pro tunc*.

120.    By reason thereof, the sum of $3,893,252.42 out of the Total Commission due from Highgate to CBRE is now due and payable from Highgate to CBRE and CBRE is entitled to judgment therefor.

## SECOND CROSS-CLAIM AGAINST DEFENDANT HIGHGATE

121.    CBRE repeats and realleges paragraphs 107 and 108 above as if fully set forth herein.

122.    From on or about October 1999 to on or about April 2000, CBRE performed real estate brokerage services for Highgate, which services resulted in GlobalCenter leasing premises located at 636 11th Avenue, New York, New York, a real property owned by Infomart, an affiliate of Highgate.

123.    The fair and reasonable value of the services provided by CBRE to Highgate in connection with CBRE's procurement of GlobalCenter as a tenant is $11,123,578.34, of which $3,893,252.42 remains due and owing.

124.    Highgate has been unjustly enriched by virtue of its failure to pay consideration for the services and benefits it has received.

125.    By reason of the foregoing, CBRE is entitled to recover damages in *quantum meruit* in a sum to be determined, but not less than $3,893,252.42.

### THIRD CROSS-CLAIM AGAINST DEFENDANT HIGHGATE

126.    CBRE repeats and realleges paragraphs 1 through 125 above as if fully set forth herein.

127.    In the event that plaintiff is awarded a judgment against CBRE on the basis of any one or more of its claims against CBRE contained in its complaint, then, in that event, CBRE is entitled to recover from Highgate all of what plaintiff is entitled to recover from CBRE.

WHEREFORE, CBRE demands judgment:

(1)    dismissing plaintiff's complaint against it;

(2)    on its first cross-claim against Highgate in the sum of not less than $3,893,252.42;

(3)    on its second cross-claim against Highgate in the sum of not less than $3,893,252.42;

(4)    on its third cross-claim against Highgate in such sum as plaintiff may recover against CBRE on any one or more of its claims in its complaint;

(5)    together with interest and the costs and disbursements of this action, and

(6)     such other and further relief to the Court seems just and proper.

GREENBERG TRAURIG, LLP

By: _____

Cathy L. Reese (# 2838)
Dennis A. Meloro (#4435)
The Nemours Building
1007 N. Orange Street, 12th Floor
Wilmington, DE  19801
(302) 661-7000

-and-

GREENBERG TRAURIG, LLP
Daniel J. Ansell (#9854)
The MetLife Building
200 Park Avenue
New York, NY  10166
(212) 801-9200

*Attorneys for Defendant CB Richard Ellis
Real Estate Services, Inc. f/k/a
Insignia/ESG, Inc. sued herein as CB
Richard Ellis, Inc. (a/k/a CB Commercial
Real Estate Group, a/k/a Insignia/ESG, Inc.,
n/k/a CB Richard Ellis Real Estate Services,
Inc.)*

Dated:  February 7, 2006

## **CERTIFICATE OF SERVICE**

I, Cathy L. Reese, Esq., certify that on February 7, 2006 I caused to be served the foregoing **Answer to Amended Complaint** upon all counsel of record via electronic filing through the CM/ECF electronic notification system.  I declare under penalty of perjury that foregoing is true  and correct.

Dated:  February 7, 2006

_____

Cathy L. Reese (#2838)

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **EXDS, INC. (f/k/a EXODUS** | § | **CASE NO. 01-10539** |
| **COMMUNICATIONS, INC.),** *et al.*, | § | **Jointly Administered (PJW)** |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| **EXDS, INC. (f/k/a EXODUS** | § | |
| **COMMUNICATIONS, INC.),** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 03-56185** |
| | § | |
| **CB RICHARD ELLIS, INC. (a/k/a CB** | § | **JURY TRIAL DEMANDED** |
| **Commerical Real Estate Group a/k/a** | § | |
| **Insignia/ESG, Inc. n/k/a CB Richard** | § | |
| **Ellis Real Estate Service, Inc.), and** | § | |
| **HIGHGATE HOLDINGS, INC.,** | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT HIGHGATE HOLDINGS, INC.'S
ANSWER TO FIRST AMENDED CROSS-CLAIM**

Defendant **HIGHGATE HOLDINGS, INC.** ("Highgate") answers the First Amended

Cross-Claim (the "Cross-Claim") filed by Defendant CB Richard Ellis, Inc. ("CBRE") on

February 7, 2006.

1. – 92.    Highgate adopts by reference paragraphs 1 through 92 of Highgate's

Answer to the First Amended Complaint (filed February 3, 2006).

93. – 106.    Paragraphs 93 – 106 of the Cross-Claim require no response.

107.    Highgate admits the allegations in paragraph 107 of the Cross-Claim.

108.    Highgate admits the allegations in paragraphs 4 and 7 of the Complaint, as

incorporated by reference in paragraph 108 of the Cross-Claim. Highgate lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint, as incorporated by reference in paragraph 108 of the Cross-Claim.

109.    Highgate admits that it entered an agreement with Insignia dated October 26, 1999, but Highgate denies that CBRE has correctly described the agreement in paragraph 109 of the Cross-Claim.

110.    Highgate admits that infomart new york llc was the landlord of the property located at 636 Eleventh Avenue during the time period at issue as alleged in paragraph 110 of the Cross-Claim. Highgate is unable to admit or deny that infomart new york llc is an affiliate of Highgate because that term is not defined in paragraph 110 of the Cross-Claim. Highgate admits that GlobalCenter entered the lease effective December 28, 1999, as alleged in paragraph 110 of the Cross-Claim.

111.    Highgate admits that it executed a written contract dated March 7, 2000, as alleged in paragraph 111 of the Cross-Claim. Highgate denies that CBRE has correctly described the agreement in paragraph 111 of the Cross-Claim.

112.    Highgate admits the allegations in paragraph 112 of the Cross-Claim, except that Insignia's right to payment was subject to a later modification or novation or other defenses.

113.    Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of the Cross-Claim.

114.    Highgate denies the allegations in paragraph 114 of the Cross-Claim.

115.    Highgate denies that the letter agreement referenced in paragraph 115 of the Cross-Claim obligates Highgate to contribute any amounts in favor of EXDS. Highgate admits the remaining allegations in paragraph 115 of the Cross-Claim, except that Insignia's

right to insist on the condition described was subject to a later modification or novation or other defenses.

116.        Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 of the Cross-Claim.

117.        Highgate lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117 of the Cross-Claim.

118.        Highgate denies the agreement attached to the Complaint behind Tab 3 required Highgate to pay money to GlobalCenter as impliedly alleged in paragraph 118 of the Cross-Claim.  Highgate denies the remaining allegations in paragraph 118 of the Cross-Claim.

119.        Highgate denies the allegations in paragraph 119 of the Cross-Claim.

120.        Highgate denies the allegations in paragraph 120 of the Cross-Claim.

121.        In response to paragraph 121 of the Cross-Claim, Highgate reasserts the admissions, denials, and averments in paragraphs 107 through 108 above and incorporates those paragraphs herein by reference.

122.        Highgate admits that infomart new york llc was the landlord of the property located at 636 Eleventh Avenue during the time period at issue as alleged in paragraph 122 of the Cross-Claim.  Highgate is unable to admit or deny that infomart new york llc is an affiliate of Highgate because that term is not defined in paragraph 122 of the Cross-Claim. Highgate further admits that GlobalCenter entered a lease of the infomart building as a result of services rendered by CBRE as alleged in paragraph 122 of the Cross-Claim.  Highgate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the paragraph 122 of the Cross-Claim.

123.        Highgate denies the allegations in paragraph 123 of the Cross-Claim.

124.    Highgate denies the allegations in paragraph 124 of the Cross-Claim.

125.    Highgate denies the allegations in paragraph 125 of the Cross-Claim.

126.    In response to paragraph 126 of the Cross-Claim, Highgate reasserts the admissions, denials, and averments in paragraphs 1 through 125 above and incorporates those paragraphs herein by reference.

127.    Highgate denies the allegations in paragraph 127 of the Cross-Claim.

128.    Highgate denies that CBRE is entitled to any of the relief requested in the Prayer of the Complaint.

129.    Highgate denies all allegations in the Cross-Claim not specifically admitted above.

## AFFIRMATIVE DEFENSES

130.    The allegations of the Cross-Claim fail to state a claim against Highgate upon which relief can be granted.

131.    CBRE is not entitled to any equitable relief because of its unclean hands.

132.    CBRE's claims are barred because EXDS rejected the Lease, as amended.

133.    CBRE's claims are barred by EXDS's prior material breach.

134.    CBRE's claims are barred by offset and/or recoupment.

135.    CBRE's claims are barred by the doctrine of abandonment by conduct.

136.    CBRE's claims are barred by *res judicata.*

137.    CBRE's claims are barred by accord and satisfaction.

138.    CBRE's claims are barred by frustration of purpose.

139.    CBRE's claims are barred in whole or in part by estoppel by contract.

140.    CBRE's claims are barred in whole or in part by failure of consideration.

141.    CBRE's claims are barred in whole or in part by illegality.

142.    CBRE cannot obtain the requested relief because of its failure to join indispensable parties.

143.    CBRE's claims are barred by waiver.

144.    CBRE's claims are barred by release.

145.    CBRE's claims are barred by excuse.

146.    CBRE's claims are barred by novation and/or modification.

**WHEREFORE**, Highgate prays:

(i)    that CBRE's Cross-Claims be dismissed;

(ii)   that judgment be entered for Highgate; and

(iii)  that Highgate be granted any other or further relief to which it may be entitled.

Respectfully submitted,

PEPPER HAMILTON LLP


By: _____
    David M. Fournier
    Delaware No. 2812

Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19801
Telephone:  (302) 777-6500
Telecopier:  (302) 421-8390

and

BELL NUNNALLY & MARTIN LLP
Beverly A. Whitley (Texas Bar No. 21374500)
John R.W. Fugitt (Texas Bar No. 24036604)
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas  75204-2429
Telephone:  (214) 740-1400
Telecopier:  (214) 740-1499

**ATTORNEYS FOR DEFENDANT
HIGHGATE HOLDINGS, INC.**